**KOLSRUD LAW OFFICES**
Joshua S. R. Kolsrud, Esq. No. 025573
Sandra Schutz, Esq. No. 034996
David R. Cole, Esq. No. 004643
1650 N. 1st Ave.
Phoenix, Arizona 85003
(480) 415-8859
Josh@KolsrudLawOffices.com

Attorney for Defendant *Diaz-Vazquez*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:25-mj-08204-JZB-1 |
| Plaintiff, | **MOTION TO RECONSIDER RELEASE CONDITIONS** |
| vs. | |
| Enrrique Ricardo Diaz-Vazquez, | (Oral Argument Requested) |
| Defendant. | |

Defendant, Enrrique Ricardo Diaz-Vazquez, through counsel, and pursuant to 18 U.S.C. § 3142, respectfully requests that the Court reconsider its prior detention order and modify his conditions of release to allow placement with Kristin Rose, who is proposed as a suitable third-party custodian. Mr. Diaz-Vazquez specifically requests that the Court direct Pretrial Services to promptly screen Ms. Rose for her suitability in this custodial role. This request is based upon significant new information, including Mr. Diaz-Vazquez's longstanding community ties from nearly 40 years of continuous residence in Arizona, his stable, high-level employment at PayPal, which remains available upon his release, and the availability of Ms. Rose as a third-party custodian.

1

This motion is supported by the accompanying Memorandum of Points and Authorities and may result in excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D).

RESPECTFULLY SUBMITTED this 21st day of March, 2025

**KOLSRUD LAW OFFICES**

*/s/ Josh Kolsrud*
Josh Kolsrud, Esq.
Attorney for Defendant *Diaz-Vazquez*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     BACKGROUND**

Defendant, Enrrique Ricardo Diaz Vazquez, is charged with making false statements in an application and use of a passport, in violation of 18 U.S.C. § 1542. Specifically, the Complaint alleges that Mr. Diaz Vazquez knowingly applied for a U.S. passport under the identity of Gene Edward Katzorke, falsely claiming U.S. citizenship and birth in Tucson, Arizona. The charges arise from an application submitted on May 20, 2022, wherein Mr. Diaz Vazquez used the identity of a deceased individual, Gene Edward Katzorke, who passed away in December 1966 at the age of two.

On March 7, 2025, Mr. Diaz Vazquez was arrested and appeared before Magistrate Judge Alison S. Bachus for his initial appearance on March 10, 2025. At this hearing, Pretrial Services recommended detention based on Mr. Diaz Vazquez's lack of legal status in the United States and a prior criminal history involving felony charges from 1988. At a subsequent detention hearing on March 12, 2025, Magistrate Judge Bachus ordered Mr. Diaz Vazquez detained as a flight risk, citing concerns about his ties

to a foreign country, previous use of aliases, the strength of evidence against him, and lack of legal status in the U.S.

However, information now available to the Court supports reopening the detention determination. First, Pretrial Services did not previously screen Mr. Diaz Vazquez's wife, Kristin Rose, as a potential third-party custodian. Kristin Rose is now available and willing to serve as a third-party custodian, ensuring Mr. Diaz Vazquez complies with all conditions of release.

Additionally, Mr. Diaz Vazquez is a veteran who has honorably served the United States, a factor that merits substantial consideration. He has deep community ties in Arizona, where he has resided continuously for nearly 40 years. Mr. Diaz Vazquez is a dedicated father to three U.S.-citizen children, underscoring his significant family ties and incentive to remain compliant with court orders.

Mr. Diaz Vazquez is also employed as a crypto-engineer at PayPal, where he earns a six-figure salary and maintains a reputation as a respected professional. Importantly, PayPal has indicated its willingness to retain Mr. Diaz Vazquez should he be released, offering both employment stability and further assurance of his compliance.

Given these significant facts, including Kristin Rose's availability as a third-party custodian, Mr. Diaz Vazquez's veteran status, longstanding community and family ties, stable employment, and PayPal's support, Defendant respectfully requests that the Court reopen and reconsider his release conditions.

**II.     ARGUMENT**

**A. The 18 U.S.C. 3142(g) Factors Weigh In Favor Of Mr. Diaz' Pretrial Release**

Under the Bail Reform Act, 18 U.S.C. § 3142(g), courts consider four factors in determining whether release conditions can reasonably assure the defendant's appearance and the safety of the community: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of any danger to any person or the community posed by the defendant's release. In this case, these factors weigh in favor of pretrial release.

1. **The Nature and Circumstances of the Offense Charged**

Mr. Diaz Vazquez is charged with making false statements in an application and use of a passport, pursuant to 18 U.S.C. § 1542. This charge does not trigger a statutory presumption of detention under the Bail Reform Act. *See* 18 U.S.C. § 3142(e). While the offense itself is undoubtedly serious, it is administrative in nature and involves no allegations of violence, threats to public safety, drug-related activities, or organized criminal conduct.

Significantly, the non-violent nature of the charge diminishes concerns regarding community safety and indicates that the risks traditionally associated with more severe offenses—such as violent crimes or large-scale drug trafficking—are not present here. Consequently, this Court can readily impose standard, well-established conditions of release, including electronic monitoring, home confinement, strict travel restrictions, and third-party custodianship, to ensure Mr. Diaz' appearance and compliance.

2. **The Weight of the Evidence Against Mr. Diaz**

While the weight of the evidence is a relevant consideration, it is the least important factor in the detention analysis. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). In this case, the government's allegations focus on administrative misconduct—specifically, making false statements in a passport application. The allegations, while serious, do not involve violent acts, threats to community safety, drug trafficking, or organized crime.

Thus, while the government's evidence may be strong regarding the alleged passport offense itself, this strength does not inherently correlate with a heightened risk of flight or danger that cannot be mitigated by appropriate conditions. Consistent with Ninth Circuit guidance, this factor does not weigh heavily in favor of detention.

### 3. Mr. Diaz' History and Characteristics[1]

Mr. Diaz's strong community ties, family obligations, employment history, and numerous character references overwhelmingly support his release. Mr. Diaz has continuously resided in Arizona for approximately 40 years, establishing deep roots and extensive relationships within the community. He is the father of three U.S. citizen children and has provided unwavering support and guidance throughout their upbringing. His daughter, Kazandra, described him as profoundly influential, instilling discipline, determination, kindness, and responsibility, which have significantly shaped her values and career success.

---

[1] Please see attached character letters.

5

Professionally, Mr. Diaz holds a highly specialized and respected position at PayPal as a Crypto Cloud Security Engineer, where he earns a substantial salary reflective of his specialized expertise. His colleagues consistently praise his integrity, professionalism, and exceptional work ethic. Steven Rosonina, a former supervisor at PayPal, highlighted Mr. Diaz' honesty, dedication, and leadership in fostering a culture of trust and collaboration. Another colleague, Robert Pond, emphasized Mr. Diaz' mentorship, diligence, and positive influence in their daily interactions and shared responsibilities.

Mr. Diaz' family members and close associates consistently emphasize his selflessness, generosity, and unwavering dedication to his loved ones and community. His wife, Kristin Rose, described him as her steadfast support, deeply committed to family, community, and his country. She underscored his humility, patriotism, and profound pride in his military service in the U.S. Army. His stepdaughter, Carolina Sandlin, characterized him as a compassionate, law-abiding individual with unwavering dedication to veterans' causes and contributions to society. Likewise, family friend Bobbi Langan reiterated his exemplary role as a supportive husband, dedicated father, and model citizen.

In addition, Mr. Diaz' patriotism and honorable service as a U.S. Army Veteran further demonstrate his character and reinforce his commitment to the United States. His acquaintances, such as Jonah Barker, explicitly recognized him as a patriot who demonstrated willingness to make personal sacrifices to defend American values.

Collectively, these numerous and compelling character references highlight Mr. Diaz's longstanding, stable ties to Arizona, his consistent employment record, significant family responsibilities, and admirable personal qualities. These characteristics substantially mitigate any perceived risks and strongly support his release on appropriate conditions.

**4. The Lack of Any Substantial Flight Risk**

Under the Bail Reform Act, the Court must determine whether the defendant presents a substantial risk of flight if released. *See* 18 U.S.C. § 3142(g)(3)(A). In making this determination, the Court considers several factors, including the defendant's community ties, family obligations, employment stability, duration of residence in the community, and the availability of a suitable third-party custodian. *Id.*

Although Mr. Diaz is a Mexican citizen and has previously used an alias, alienage alone is not dispositive in assessing risk of flight. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Moreover, the Ninth Circuit explicitly prohibits district courts from ordering detention solely based on the potential for immigration detention or removal upon release. *See* 18 U.S.C. § 3142(d); *Santos-Flores*, 794 F.3d at 1091; *see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("The 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody.").

Mr. Diaz acknowledges that approximately 37 years ago, he fled to Mexico following wrongful accusations of capital murder. Though he was later acquitted and the

7

charge ultimately reduced to a misdemeanor, Mr. Diaz candidly recognizes that fleeing was a serious mistake, driven by immaturity, fear, and poor judgment. At that time, he was young, unmarried, and lacked significant familial or community obligations.

Importantly, the Court's flight risk analysis should focus primarily on Mr. Diaz' substantial conduct in the nearly four decades following that isolated incident. Since that event, Mr. Diaz has continuously resided in Arizona, cultivating deep-rooted community relationships, substantial family responsibilities, and significant professional accomplishments. His present circumstances dramatically contrast with his youthful instability—he is now married, maintains significant family obligations, and holds a stable, respected position at PayPal, all of which provide compelling incentives for compliance and court appearances.

Further mitigating any residual flight concerns, Kristin Rose—Mr. Diaz's wife and a respected Arizona wealth manager—is available and willing to serve as a third-party custodian. Ms. Rose has not previously been screened by Pretrial Services; her willingness and qualifications to assume custodial responsibilities offer an additional, reliable safeguard against potential flight risk.

Thus, Mr. Diaz' decades of stable residency, responsible familial and community relationships, established career, and the availability of a reliable third-party custodian significantly outweigh any remote concerns arising from his distant youthful indiscretion. Any residual concerns can be adequately addressed through targeted conditions, such as electronic monitoring, travel restrictions, surrender of travel documents, and custodial

supervision by Ms. Rose. Accordingly, the Court should find no substantial risk of flight warranting Mr. Diaz' continued detention.

**5. The Nature and Seriousness of Any Danger to the Community**

The final factor under the Bail Reform Act requires the Court to assess the nature and seriousness of any danger to the community posed by the defendant's release. *See* 18 U.S.C. § 3142(g)(4). This consideration encompasses not only physical danger but also other forms of harm or risk to society.

In this case, the alleged offense involves administrative misconduct—specifically, false statements in a passport application—and does not inherently pose a threat to the physical safety or well-being of the community. Significantly, the record contains no allegations of violence, threats, drug-related activity, or involvement with dangerous weapons.

The Court and Pretrial Services initially expressed concern over Mr. Diaz's prior criminal history involving felony charges from 1988. However, this isolated incident occurred approximately 37 years ago, making it exceedingly remote in time. Moreover, the offense was subsequently designated as a misdemeanor, significantly reducing its probative value regarding current dangerousness or risk to the community.[2] Courts routinely give minimal weight to isolated criminal incidents of such considerable remoteness, especially when the defendant has demonstrated a lengthy period of lawful conduct since that time.

---

[2] The basis for this statement comes from counsel's conversations with Mr. Diaz. Counsel is attempting to obtain certified copes of Mr. Diaz' final disposition.

Since the resolution of that misdemeanor nearly four decades ago, Mr. Diaz has maintained an exemplary personal and professional record, establishing himself as a respected employee at PayPal, an honorable veteran of the U.S. Army, and a reliable and valued member of the community. These decades of lawful behavior, reinforced by consistent testimonials of his good character, integrity, and strong moral values, confirm that any speculative concerns arising from his distant misdemeanor conviction are fully mitigated.

Thus, considering the non-violent nature of the current offense, the extraordinary remoteness of his prior misdemeanor, and Mr. Diaz's longstanding history of responsible, law-abiding conduct, there is no credible indication that he poses any danger to the community. Accordingly, this factor weighs heavily in favor of his release on appropriate conditions.

**B. Proposed Conditions of Release**

To effectively mitigate any potential concerns regarding flight or danger to the community, Mr. Diaz respectfully proposes the following specific release conditions:

1. **Third-Party Custodian:**

    Designate Kristin Rose—Mr. Diaz's wife and a respected, longtime resident of Arizona—as a third-party custodian. Mr. Diaz requests that Pretrial Services promptly screen and evaluate Ms. Rose's suitability for this role.

2. **Electronic Monitoring:**

    Require Mr. Diaz to participate in electronic GPS monitoring at his expense, ensuring continuous supervision of his location at all times.

3. **Home Detention and Travel Restrictions:**

Order Mr. Diaz to home detention, restricting him to his residence except for approved purposes, including employment, medical treatment, court appearances, meetings with counsel, or other activities explicitly approved in advance by Pretrial Services.

4. **Passport Surrender and Restriction on Travel Documents:**

Require Mr. Diaz to surrender any passports and travel documents to Pretrial Services immediately upon release. Further, impose an express prohibition on obtaining new travel documentation without prior authorization from the Court.

5. **Continued Employment:**

Permit Mr. Diaz to continue employment at PayPal. Mr. Diaz's stable, high-level employment will provide substantial incentive for compliance, and his continued employment has been expressly supported by his employer.

6. **Regular Reporting to Pretrial Services:**

Impose frequent check-ins with Pretrial Services—at intervals determined appropriate by the Court—to confirm compliance with all release conditions and promptly address any concerns.

These conditions are carefully tailored to ensure Mr. Diaz's appearance at future court proceedings and eliminate any plausible risk to the community, thus fully satisfying the requirements of 18 U.S.C. § 3142.

**III.   CONCLUSION**

For all the foregoing reasons, the relevant factors under the Bail Reform Act weigh strongly in favor of Mr. Diaz' release. The nature and non-violent circumstances of the offense, coupled with Mr. Diaz's substantial community ties, exemplary employment record, significant family obligations, and minimal flight or safety risks, collectively demonstrate that continued detention is unnecessary. The proposed conditions of release adequately mitigate any residual concerns regarding risk of flight or

danger to the community. Therefore, Mr. Diaz respectfully requests that the Court reopen his detention determination and grant pretrial release on the conditions outlined above.

RESPECTFULLY SUBMITTED this 21st day of March, 2025

**KOLSRUD LAW OFFICES**

/s/ Josh Kolsrud
Josh Kolsrud, Esq.
Attorney for Defendant *Diaz-Vazquez*

# CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**United States District Court**

**United States Attorney's Office**

*/s/ Josh Kolsrud*
Josh Kolsrud, Esq.
Attorneys for Defendant *Diaz-Vazquez*

13