TIMOTHY COURCHAINE
United States Attorney
District of Arizona
SYDNEY YEW
Special Assistant U.S. Attorney
Arizona State Bar No. 032551
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Sydney.yew@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR-25-00469-PHX-SPL |
| Plaintiff, | |
| vs. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER RELEASE CONDITIONS** |
| Enrrique Ricardo Diaz Vazquez, a.k.a. Gene Edward Katzorke, | **AND** |
| Defendant. | **MEMORANDUM ON DETENTON** |

The United States of America, by and through its undersigned attorney, hereby responds to the Defendant's Motion to Reconsider Release conditions (Doc. 11) and provides its position on detention in the event the Court grants the Defendant's Motion to Reconsider Release conditions in the above-referenced matter.

I. **BACKGROUND**

On May 20, 2022, the Defendant, Enrrique Ricardo Diaz Vazquez, executed an application for a United States Passport Renewal, Form DS-82, in the name of "Gene Edward Katzorke." He provided on the Form DS-82 application his date of birth as August 1964, born in Tucson, Arizona. He indicated he had travel plans to Mexico. His application was flagged for potential fraud due to a late issuance of a social security number as well as discovering a 1966 obituary for a Gene Edward Katzorke.

The Defendant previously obtained U.S. passports in the name "Gene Edward Katzorke" in 1986 and 2012. The Defendant applied to renew his U.S. passport in the name of "Gene Edward Katzorke" in 2022, August 2024 and September 2024 with the Department of State. On March 7, 2025, the Defendant and his wife, Kristen Rose, arrived at a passport center in Tucson, Arizona for a routine passport interview on the Defendant's applications. The Defendant admitted to executing the 2022 and August 2024 passport renewal applications via mail and to executing the September 2024 passport renewal application via online.

On that same day, during a post-*Miranda* interview, the Defendant admitted that he took and used the name "Gene Edward Katzorke" as early as 1986 when he joined the U.S. military under the name "Gene Edward Katzorke." The Defendant continued to use that name until his arrest on March 7, 2025–making it approximately 39 years that he lived under another identity, fraudulently as a United States citizen. The Defendant also told DSS agents that a U.S. military recruiter advised the Defendant that he could not join the U.S. military as an illegal alien, but that the Defendant could find a name of a deceased U.S. citizen in a cemetery and use that name to join the military. The Defendant said he did just that and selected the name "Gene Edward Katzorke." He admitted that his true name is Enrrique Ricardo Diaz Vazquez, born in November 1964 in Mexico.

Prior to March 7, 2025, the United States Diplomatic Security Services (DSS) Special Agents investigated the Defendant for suspected passport fraud. The investigation revealed that the Defendant began to use the name "Gene Edward Katzorke" as early as 1986 when he joined the U.S. military. He served in the U.S. military for approximately 9 years. DSS agents discovered and confirmed through a death certificate and relatives of the real Gene Edward Katzorke that the real Katzorke passed away at 2 years old in Colorado in December 1966.

The investigation also revealed that the Defendant, under the name "Gene Edward Katzorke," was arrested for first degree murder and child abuse of his nine-month-old stepdaughter (herein referred to as the "infant victim") in 1988–the daughter of his then-

wife (herein referred to as the "infant victim's mother"). (Attach. A.) On June 26, 1988, the Defendant was home with the infant victim's mother and the infant victim. (*Id.*) While the infant victim's mother was sleeping in the bedroom, the Defendant woke her up stating something was wrong with the infant victim. (*Id.* at 17.) They immediately called for help and the Tucson Police Department (TPD) arrived to the scene. (*Id.*) The infant victim was unresponsive and was transported to the hospital where she ultimately passed away. (Attach. A.)

According to the infant victim's mother in 1988, the Defendant told her three different versions of what happened to the infant victim on the day of the incident. (*Id.*) All three versions involved the infant victim falling to the ground accidentally in some manner, leading to her death. (*Id.*) She told TPD that she was afraid to leave the infant victim with the Defendant as he was jealous of the infant victim and violent. (*Id.* at 16.) She said the Defendant killed several of his own pets out of anger when he was growing up. (*Id.*) She also provided details to TPD about prior injuries that the infant victim incurred when the infant victim was with the Defendant alone. (*Id.* at 17.) She said that the Defendant would get mad if the infant victim's mother fed the infant victim food, and the Defendant did not permit her to purchase clothes or toys for the infant victim. (*Id.*)

Law enforcement observed 4-5 bruises around the infant victim's forehead as well as bruising on the infant victim's abdomen and torso. (*Id.* at 18.) A post-mortem examination of the infant victim revealed the cause of death as blunt force trauma to the head. (*Id.* at 24.) TPD found in a bedroom closet an Arizona identification card with the name "Richard Henry Diaz" and a passport with the Defendant's true name, Enrrique Ricardo Diaz Vazquez[1] with a date of birth of November 1964.

---

[1] The police report spells the name as "Enrique Ricardo Diaz-Vasquez."

When the TPD arrived on scene, the TPD Captain told the Defendant to stand by for police, yet the Defendant did not. (*Id.* at 26.) Instead, the Defendant got into a car and fled the scene to his cousin's house, Jose Aguirre Diaz. (*Id.*) *See also* Attach. B. From there, the Defendant fled to Mexico as his mother lived in Mexico.

On July 9, 1988, the Tucson Police Department, in collaboration with the Attorney General, Secretary of State, the Mexican Federal Police and United States Immigration Authorities, arranged for the deportation of the Defendant to the United States from Mexico. (Attach. A.) United States officials escorted the Defendant from Mexico to the United States. (*Id.*) He was deported as a United States Citizen under the name "Gene Edward Katzorke." (*Id.*)

Subsequently, the Defendant was convicted of negligent homicide and negligent child abuse of the infant victim by a jury. However, on appeal, the Arizona Court of Appeals reversed his conviction because of an error in the jury selection process relating to *Batson*. (Attach. C.) The criminal case ultimately resolved to a conviction for Cruelty Toward a Child. This is the Defendant's only known criminal conviction at this time.

The investigation by DSS agents also revealed that the Defendant's true identity is Enrrique Ricardo Diaz Vazquez, born in Mexico. DSS agents found a Mexican birth certificate for the Defendant in the name of Diaz Vazquez. The Defendant's cousin, Jose Aguirre Diaz, also confirmed that the Defendant was Diaz Vazquez and positively identified him in one of the U.S. passport photos in his application under "Gene Edward Katzorke."

Yet, the Defendant continued to live as a United States citizen under the "Gene Edward Katzorke" name fraudulently. He served his entire time in the U.S. military under the Katzorke name. He applied a total of 5 times for a U.S. passport from 1986 through 2025 under the Katzorke name. He was employed with Paypal under the Katzorke name. As the Defendant admitted to DSS agents in his March 7, 2025 interview, he has not used his real name Diaz Vazquez in a very long time.

Additionally, DSS agents received information that the Defendant had an Arizona Concealed Weapons Permit. DSS agents in collaboration with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), began to investigate into whether the Defendant illegally possessed any weapons based on information that the Defendant had an Arizona issued concealed weapons permit. On March 27, 2025, U.S. Magistrate Judge Eileen S. Willett approved a residential search warrant of the Defendant's residence at 2016 E Gwen Street, Phoenix, AZ 85042. (Attach. D.) The search warrant requested to seize items from the Defendant's residence, including firearms, ammunition and a concealed weapons permit for the Defendant. (*Id.*) On March 28, 2025, ATF agents executed the search warrant. ATF agents recovered one (1) Tisas Model Zigana PX-9, 9 mm caliber semi-automatic pistol, serial #T0620-19BM16725 from the desk in the Defendant's office in his residence. ATF agents also recovered approximately 59 lbs. of ammunition, totally approximately 970 rounds of assorted ammunition of varying calibers. It was also discovered that the Defendant has a pilot's license from the Federal Aviation Administration (FAA).

The Defendant has been indicted on three counts of False Statement in Application or Use of Passport in violation of 18 U.S.C. § 1542 based on his execution of U.S. passport applications in May 2022, August 2024 and September 2024.

II. **RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER RELEASE CONDITIONS**

The government opposes the Defendant's Motion to Reconsider Release Conditions as there is no newly discovered evidence from the March 12 detention hearing.

A motion for reconsideration can only be granted when the court "(1) is presented with newly discovered evidence; or (2) committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law." *United States v. Herman*, No. CR-08-146-LRS, 2009 WL 2973123, at *2 (E.D. Wash. Sept. 11, 2009), aff'd 415 F. App'x 822 (9th Cir. 2011).

The Court reviews detention orders de novo. *United States v. Koening*, 912 F.2d 1190, 1191-93 (9th Cir. 1990). De novo review in this context does not mean the district court is required to hold a new evidentiary hearing to evaluate credibility disputes or even to grant further argument. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980). Rather, the Court has discretion as to whether to hear additional argument or evidence, and "[c]learly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Koening*, 912 F.2d at 1193. Thus, the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

In this case, on March 12, 2025 at the status hearing on detention and preliminary hearing, the Defendant, through his prior counsel Vernon Lorenz, submitted on the record of detention. The government continued to request detention of the Defendant. The Court found by a preponderance of the evidence that the Defendant is a flight risk and thus detention of the Defendant was required. (Doc. 8.) The Court found that the Defendant was a flight risk due to his ties to a foreign country; that the Defendant used aliases and false identifying information; that the weight of the evidence against him is great; and that the Defendant lacked status in the United States. (*Id.*) In his Motion to Reconsider (Doc. 11), the Defendant would like his wife to be screened as a potential third-party custodian– deeming this "significant new information." However, this is not new information as the Defendant and his wife have been married well before the March 12 hearing. In fact, the Defendant's wife was present at the March 7, 2025 interview that led to the Defendant's arrest, as well as present at the March 12 detention hearing. Therefore, there is no new information the Defendant proposes to warrant a reconsideration of detention. As such, his Motion to Reconsider should be denied.

III. **MEMORANDUM ON DETENTION**

In the event the Court grants the Defendant's Motion to Reconsider, the government submits a memorandum on detention. The government continues to seek detention in this case as the Defendant is a serious flight risk as well as a danger to the community.

18 U.S.C. § 3142(e) provides that the court determines whether any "condition or combination of conditions [of release] will reasonably assure the appearance of the person as required and the safety of any other person and the community." The government has the burden of showing flight risk by a preponderance of the evidence. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019). Additionally, the government has the burden of showing dangerousness by clear and convincing evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

In deciding whether detention of an individual is necessary, the Court considers four factors:

1. the nature and circumstances of the offense charged;
2. the weight of the evidence against the person;
3. the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and
4. the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *see also, Hir*, 517 F.3d at 1086, *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986); *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir.1985).

    **a.**  **The Nature and Circumstances of the Offense Charged.**

The Defendant is charged with three counts of False Statement in Application or Use of Passport, in violation of 18 U.S.C. § 1542. (Doc. 13.) The charges involve three separate U.S. passport applications (or renewal applications) that the Defendant executed on May 2022, August 2024 and September 20224. (*Id.*) He is facing a maximum sentence of 10 years. While the charges of the offense solely involve passport fraud, the Defendant's passport fraud case is intertwined with his approximate 39-year scheme of fraudulently

using the name "Gene Edward Katzorke" and fraudulently posing as a United States citizen. By doing so, he was able to exercise and enjoy the privileges of a United States citizen to include travel in and out of the United States, when he himself has been a native and citizen of Mexico with no legal permission to be in the United States. The nature of the offenses highlight his longtime fraudulent scheme, demonstrating he is a serious flight risk under this factor.

### b. The Weight of the Evidence Against the Defendant.

The weight of the evidence against the Defendant is significant in this case as discussed in Section I of this Motion. There is significant evidence, such as an obituary, death certificate and testimony from the real Katzorke's sibling, that the real Gene Edward Katzorke passed away in 1966. Moreover, there is significant evidence that the Defendant continuously used the name "Gene Edward Katzorke" fraudulently since 1986 through 2025. Military records, the 1988 police reports and his prior U.S. passport applications in 2001, 2012, 2022 and 2024 demonstrate his continuous and fraudulent use of the Katzorke name to pretend to be a United States citizen. Therefore, this factor highlights his continuous 39-year scheme to fraudulently pose as a United States citizen in the Katzorke name, making him a serious flight risk.

### c. The History and Characteristics of the Defendant.

The Defendant, through counsel, in his Motion to Reconsider Release Conditions highlighted the Defendant's ties to the community with his wife and his three U.S. citizen children. He also lists that he is a Crypto Cloud Security Engineer for paypal, earning a "substantial salary reflective of his specialized expertise." (Doc. 11 at 6.)

While the Defendant has listed ties to the community, he has been present in the community *under the false pretenses* that he is Gene Edward Katzorke and a United States citizen. While an officer who has served in the U.S. military is generally considered a positive factor, the Defendant nonetheless served in the military through fraud by posing as a U.S. citizen under the Katzorke name. He continued this scheme by working under the Katzorke name as a U.S. citizen at Paypal.

Additionally, there is strong evidence demonstrating that the Defendant has the propensity to flee from law enforcement. In 1988, he fled to Mexico after facing murder charges. But for the collective effort from multiple law enforcement agencies, the Defendant may have never been deported back to the United States to face his criminal charges. With the history of fleeing the country after facing criminal charges coupled with his substantial salary at Paypal, the Defendant has the financial means and past history to flee the United States once again. He has demonstrated a history of possessing fraudulent documents–from 1986 when he first obtained a U.S. passport fraudulently, to 1988 where he possessed identity documents in different names that TPD found in a bedroom closet, to 2012 through 2022 with a U.S. passport under the Katzorke name. Moreover, he is a native and citizen of Mexico with a Mexican birth certificate. Based on his history and characteristics, the Defendant is a serious flight risk.

Moreover, the Defendant was convicted of negligent homicide and negligent child abuse that was later overturned over a *Batson* challenge. The facts of the homicide demonstrate that he has an extreme dangerous propensity to harm not only an individual, but a nine-month-old human being. Even in 1988, he was described as violent, jealous and engaged in serious dangerous behavior. For those reasons, the Defendant is a danger to the community.

Additionally, it has been discovered that the Defendant has a pilot's license by the FAA. Given that he has the license to be able to fly planes, he is an extreme flight risk.

### d. The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release.

There is significant evidence that the Defendant is a danger to the community. Aside from the 1988 homicide conviction-later-overturned and the details surrounding that, there are records demonstrated that the Defendant has purchased at least 10 firearms. However, on March 28, 2025 during the execution of the search warrant of his residence, only one firearm was found. A significant amount of varying ammunition was also found in the residence. The whereabouts of the 10 firearms listed in the search warrant are

unknown at this time. He is a danger by illegally possessing at least one weapon due to being an illegal alien, as well as obtaining the weapon by posing as U.S. citizen Gene Edward Katzorke. As such, he is a danger to the community.

Based on the reasons above, the government is requesting detention of the Defendant based on the Defendant being a serious flight risk and a danger to the community.

Respectfully submitted this 28th of March, 2025

                    TIMOTHY COURCHAINE
                    United States Attorney
                    District of Arizona

                    *s/Sydney Yew*
                    SYDNEY YEW
                    Special Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Joshua Kolsrud, Esq.

*/s/ Lori Feasel*
Lori Feasel
U.S. Attorney's Office